IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JILL M. BECKMAN, | ) | CASE NO. 1:18-cv-00985 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| GUARDANT HEALTH, INC. | ) | **AMENDED COMPLAINT** |
| | ) | |
| Defendant. | ) | **(Jury Demand Endorsed Hereon)** |

Now comes Plaintiff, Jill M. Beckman ("**Jill**"), by and through undersigned counsel, and pursuant to the written consent of Defendant, Guardant Health, Inc., Plaintiff does hereby amend her original complaint as follows:

## PARTIES

1. Plaintiff, Jill, is a citizen of the State of Ohio, residing at 6900 Spencer Lake Road, Medina, Ohio.

2. Defendant, Guardant Health, Inc. ("**Guardant**"), is a corporation, which was incorporated in the State of Delaware and maintains its principle place of business at 505 Penobscot Drive, Redwood City, California.

## JURISDICTION AND VENUE

3. The parties are of diverse citizenship.

4. The amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

5. Subject matter jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a).

6. The exercise of personal jurisdiction in Ohio is proper under Fed. R. Civ. P. 4 and R.C. 2307.382 (A) and (B) because of Guardant's regular, ongoing and systematic contact with Ohio, including the employment of Ohio citizens as account executives; and because the acts giving rise to Jill's claims occurred in Ohio. Specifically, Guardant markets, promotes, offers for sale, sells, and/or distributes Guardant360 through account executives employed in Ohio and elsewhere to customers including oncologists, pathologists, healthcare institutions and/or others in Ohio and elsewhere. Guardant entered into an employment agreement with Jill in Ohio that included, among other documents, a Confidential Information and Assignment Agreement; and Guardant entered into a Contract of Separation (as hereinafter defined) with Jill in the State of Ohio.

7. Pursuant to 28 U.S.C. § 1391(c)(2), Guardant is deemed to reside within the geographic area of the Northern District of Ohio.

8. A substantial part of the events or omissions giving rise to Jill's claims occurred in this judicial district.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## NATURE OF THIS ACTION

10. Jill was formerly employed by Guardant as an Account Executive responsible for sales of Guardant360, a genomic liquid biopsy.

11. Guardant terminated Jill in September 2017.

12. This action arises from a negative and false statement made by an employee of Guardant concerning Jill, after the termination of Jill's employment, and in response to an employment verification request made on behalf of a prospective new employer of Jill.

13. The negative and false statement was unauthorized, because as part of Jill's separation from Guardant, Guardant agreed to only provide certain specified, neutral information in response to requests from third parties for employment verification.

14. In this diversity action, Jill alleges that Guardant, as a result of its negative, false and unauthorized statement, and related conduct, is liable to Jill for breach of contract and promissory estoppel.

15. Jill contends that Guardant is liable to her for compensatory damages under her various causes of action.

16. Jill's damages arise from her foreseeable loss of the prospective employment opportunity and the foreseeable, accompanying mental anguish associated therewith.

## FACTUAL ALLEGATIONS

17. On or about September 15, 2016, Jill started working for Guardant as an Account Executive – Cleveland/Pittsburgh.

18. Jill's husband, Don, died from cancer on or about October 12, 2018.

19. In or around January 2017, Jill learned that Don's cancer had advanced to the point that he was suffering from Stage 4 cancer – Metastatic Disease.

20. Also in or around January 2017, Jill shared Don's diagnoses of Stage 4 cancer – Metastatic Disease, with Alicia Madison, Guardant's District Sales Manager for the Northeast District and Jill's direct superior at Guardant.

21. In May 2017, Jill was informed that she was losing part of her sales territory in Michigan, including her largest account (the University of Michigan).

22. On September 18, 2017, Guardant terminated Jill.

23. Upon information and belief, Guardant terminated Jill because Guardant determined that Jill was not able to perform the work required of an Account Executive.

24. Specifically, Jill was unable to meet her sales goals in light of her reduced sales territory and the non-viability of her remaining sales territory.

25. On October 5, 2017, at 9:50 a.m., Amelia E. Merrill, Guardant's VP, People, e-signed and e-mailed to Jill a letter dated October 2, 2017 (the "**Separation Letter Agreement**"). A true and complete copy of the Separation Letter Agreement is attached hereto as **Exhibit 1**.

26. On October 5, 2017, at 10:18 a.m., Casey Khoo, aka Casey Jenkins, Guardant's Manager, People Operations, e-signed and e-mailed to Jill a series of further related documents (collectively, the "**Separation Documents**"), including an Acknowledgement of Separation Documents; Notice to Employee as to Change in Relationship; and Final Paycheck Acknowledgement. True and complete copies of the Separation Documents are attached hereto as **Exhibit 2**. The Separation Letter Agreement and the Separation Documents are hereafter referred to collectively as the "**Contract of Separation**."

27. The Acknowledgement of Separation Documents, included as part of the Contract of Separation, states, in part, that "employee references come through the People Operations Team and *cover last employee title, date of hire and date of separation only.*" (Emphasis added)

28. The Notice to Employee as to Change in Relationship states, in part, that for "employment verification enquiries, *the Company's HR Department will only confirm your start date, your employment end date, and your annual salary as of your last day of employment.*" (Emphasis added)

29. Jill e-signed and e-mailed to Guardant the Separation Letter Agreement on October 6, 2017, at 11:24 a.m.

30. Jill e-signed and e-mailed to Guardant the Separation Documents, including the Acknowledgement of Separation Documents and the Notice to Employee as to Change in Relationship, on October 6, 2017, at 11:31 a.m.

31. On or about November 10, 2017, Jill applied for unemployment compensation benefits with the Ohio Department of Job and Family Services ("**ODJFS**").

32. On or about December 4, 2017, ODJFS issued a Determination of Unemployment Compensation Benefits ("**ODJFS Determination**"), a true and complete copy of which is attached hereto as **Exhibit 3**.

33. The ODJFS Determination states that Guardant terminated Jill because she was "not able to perform the required work."

34. The ODJFS Determination states further that Jill was "discharged without just cause."

35. Guardant did not appeal the ODJFS Determination.

36. On or about December 6, 2017, Jill received a written employment offer from Bayer U.S. LLC ("**Bayer**"), a true and complete copy of which is attached hereto as **Exhibit 4**.

37. The offer from Bayer was for the position of Oncology Specialty Consultant – Cleveland, and the position would have allowed Jill to be based at her residence in Medina, OH; included a base salary of $150,000.00, plus eligibility for annual merit increases and participation in a bonus program; provided access to a company car; and included various other employment benefits, including health insurance and a 401(k) program.

38. On or about December 8, 2017, Jill accepted Bayer's offer of employment and passed a physical and drug screening, at Bayer's request.

39. However, Bayer's offer to Jill was contingent upon several background checks and verifications, including past employment verification.

40. On or about December 15, 2017, Justifacts Credential Verification Inc. ("**Justifacts**") completed and transmitted to Bayer a report concerning Jill (the "**Report**"). A true and complete copy of the Report is attached hereto as **Exhibit 5**.

41. The Report indicates that on December 15, 2017, Davina Patel ("**Patel**"), a People Operations Associate for Guardant, responded by facsimile to an inquiry from Justifacts concerning Jill's employment at Guardant.

42. Patel was an employee of Guardant on December 15, 2017.

43. Patel was acting within the scope of her employment with Guardant when she responded to Justifacts's inquiry on December 15, 2017.

44. Patel had both actual and apparent authority to respond to Justifacts's inquiry on behalf of Guardant on December 15, 2017.

45. In her response to Justifacts, Patel stated that Jill "was terminated for misconduct."

46. Patel's statement of behalf of Guardant is the only adverse response in the Report, other than a single, minor, non-moving traffic violation.

47. On December 18, 2017, Jill sent an email to Guardant asking "Did you receive a request from Justifacts to verify my dates of employment & if so, were you able to respond? This is important to complete my background check for a new job."

48. That same day, Gailon Jacobs, Senior Director, People, at Guardant, responded, "Hi Jill, you are all set. It was sent it [sic] last week and Aisha confirmed today. Good luck with your new role." A copy of the December 18, 2017 email exchange between Jill and Ms. Jacobs is attached hereto as **Exhibit 6**.

49. Neither Ms. Jacobs nor anyone else from Guardant informed Jill that Guardant had reported to Justifacts that Jill was "terminated for misconduct."

50. On December 27, 2017, a representative of Bayer contacted Jill by telephone to inform her that Bayer might withdraw its offer because the Jusifacts report indicated that Jill was terminated from Guardant for misconduct.

51. On December 30, 2017, Jill sent an email to several Guardant employees, pointing out that Guardant's response reflected in the Justifacts Report violated the Separation Documents, and that Jill "may not be hired for this new job due to Davina [Patel] stating that I was terminated for misconduct." A copy of Jill's December 30, 2017 email is attached hereto as **Exhibit 7**.

52. Upon information and belief, no one from Guardant ever made any effort to withdraw or correct Guardant's materially false and unauthorized statement that Jill was "terminated for misconduct."

53. On or about January 11, 2018, Jill received a letter from Bayer, stating that Bayer "is unable to extend an offer of employment to you" and that its decision was "made based in whole or in part on information received in a consumer report from Justifacts." A copy of Bayer's January 11, 2018 letter is attached hereto as **Exhibit 8**.

54. Despite her continuing efforts to find new employment, Jill remains unemployed.

55. Since December 27, 2017, the date that Jill first learned that the Jusifacts report indicated incorrectly that she was terminated from Guardant for misconduct, and that she was likely to lose the opportunity at Bayer as a result, Jill has suffered from mental anguish, chest pains, anxiety and insomnia.

56. Jill's mental anguish, chest pains, anxiety and insomnia result from the loss of her opportunity with Bayer, which would have provided both adequate income (more than

7

$150,000.00 annually) and convenience (residence-based employment) to provide support and care for her ailing husband, Don.

## COUNT I

### (Breach of Contract)

57. Jill restates and re-avers paragraphs 1-56 above as if fully rewritten herein.

58. The Contract of Separation constitutes a binding contract governing the terms of Jill's separation from Guardant.

59. Jill performed all obligations required of her under the Contract of Separation.

60. The Contract of Separation provides explicitly that Guardant will respond to requests for references and employment verification by providing only the neutral information of Jill's employment start date; employment end date; and last employee title and/or annual salary as of last day of employment.

61. Guardant, by and through its employee, Patel, breached the Contract of Separation by providing a response to Justifacts's employment verification request that included information beyond Jill's employment start date; employment end date; and last employee title and/or annual salary as of last day of employment.

62. Guardant, by and through its employee, Patel, breached the Contract of Separation by providing an adverse and negative reference regarding Jill, as opposed to a neutral reference, as specifically required of Guardant under the Contract of Separation.

63. Jill has suffered damages in excess of $75,000.00 as a direct and proximate result of Guardant's Breach of the Contract of Separation.

## COUNT II

### (Promissory Estoppel)

64. Jill restates and re-avers paragraphs 1-56 above as if fully rewritten herein.

8

65. Pursuant to the Acknowledgement of Separation Documents and the Notice to Employee as to Change in Relationship, Guardant, by and through its employee, Casey Khoo, aka Casey Jenkins, made a clear and unambiguous promise to Jill that Guardant would respond to requests for references and employment verification by providing only the neutral information specified in those documents.

66. It was reasonable and foreseeable that Jill would rely upon this promise from Guardant.

67. Jill did in fact rely upon Guardant's promise that it would provide only neutral information in response to Justifacts's employment verification request.

68. If Jill had known that Guardant would inaccurately indicate to Justifacts that Jill was terminated for misconduct, Jill would have had the opportunity to provide more context and detail to Justifacts (and Bayer) regarding the circumstances surrounding her separation from Guardant.

69. As it happened, by the time Jill learned of Guardant's materially false and unauthorized statement, the damage was beyond her ability to repair with Bayer; and Guardant failed and refused to withdraw or correct its materially false and unauthorized response, despite Jill explicitly bringing the error to the attention of Guardant's human resources department.

70. Injustice can be avoided only through the enforcement of Guardant's promise.

71. Jill has suffered damages in excess of $75,000.00 as a direct and proximate result of her reliance upon Guardant's promise, and Guardant's failure to abide by its promise.

WHEREFORE, Jill demands judgment in her favor and against Guardant as follows:

A. On Count I for compensatory monetary damages in an amount to be determined at trial;

B. On Count II for compensatory monetary damages in an amount to be determined at trial;

C. On all counts, for an award of Jill's costs, expenses and reasonable attorney's fees in connection with this action; and

D. On all counts, for such further relief as this Court finds just and proper.

## JURY DEMAND

Jill demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Stephen M. Bales*
STEPHEN M. BALES (0003380)
BRIAN F. KAMPMAN (0092386)
ZIEGLER METZGER LLP
1111 Superior Avenue, Suite 1000
Cleveland, Ohio 44114
216-781-5470 / Fax: 216-781-0714
Email: sbales@zieglermetzger.com
bkampman@zieglermetzger.com

*Attorneys for Plaintiff, Jill M. Beckman*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February, 2018, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail as indicated. Parties may access this filing through the Court's system.

/s/ *Stephen M. Bales*
STEPHEN M. BALES (0003380)