**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JILL M. BECKMAN,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:18-cv-00985-DCN |
| v. | : | |
| | : | Judge Donald C. Nugent |
| **GUARDANT HEALTH, INC.,** | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

---

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY
JUDGMENT**

---

Amy Ryder Wentz (0081517)
Shannon M. Byrne (0088182)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH  44114
Telephone: 216.696.7600
Facsimile: 216.696.2038
awentz@littler.com
sbyrne@littler.com

Attorneys for Defendant
GUARDANT HEALTH, INC.

# TABLE OF CONTENTS

**PAGE**

I.  INTRODUCTION ........................................................................................... 1

II. STATEMENT OF FACTS ............................................................................ 3

    A.  Plaintiff's termination from Guardant Health, Inc. ................................. 3

    B.  Guardant Health provides employment verification for Plaintiff ......... 5

III. LAW AND ARGUMENT ............................................................................ 7

    A.  Standard of Review ................................................................................ 7

    B.  Plaintiff's Breach of Contract Claim Fails as a Matter of Law Under Well-Settled Principles of Contract Interpretation ......................................... 7

        1.  The Separation Agreement created no obligation for employment verifications ............................................................................. 7

        2.  The parole evidence rule bars extrinsic evidence beyond the four corners of the Separation Agreement ....................................... 9

        3.  No consideration for Guardant's policy about employment verifications ........................................................................... 11

        4.  No evidence that Plaintiff suffered damages as a result of the employment verification ......................................................... 11

    C.  Plaintiff's promissory estoppel claim fails as a matter of law ........... 13

        1.  Plaintiff did not rely on the employment verification policy to her detriment – and even if she did, the reliance was neither reasonable nor foreseeable ...................................................................... 13

        2.  No evidence that Plaintiff suffered damages as a result of Guardant's alleged deviation from its employment verification policy and holding Guardant liable for not enforcing this policy is unjust ..................................................................................... 15

    D.  Plaintiff waived her claims against Guardant .................................... 15

IV. CONCLUSION ........................................................................................ 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................7

*Andersons, Inc. v. Consol, Inc.*,
    348 F.3d 496 (6th Cir. 2003) ...............................................................................14

*Bartlett v. Daniel Drake Mem. Hosp.*,
    75 Ohio App.3d 334 (Ohio Ct. App. 1991) .........................................................11

*Baumgartner v. AIM Leasing*,
    2013 Ohio App. LEXIS 776 (Ohio Ct. App. 2013)..............................................16

*Bollinger, Inc. v. Mayerson*,
    116 Ohio App. 3d 702 (Ohio Ct. App. 1996) ..................................................9, 10

*Burniac v. Wells Fargo Bank, N.A.*,
    2015 U.S. Dist. LEXIS 9583 (E.D. Mich. Jan. 28, 2015).....................................12

*Caiazza v. Mercy Med. Ctr.*,
    No. 2013AP-12-0072, 2014 Ohio App. LEXIS *8-9 (Ohio Ct. App. May 27,
    2014) .....................................................................................................................11

*Carlisle v. T & R Excavating*,
    123 Ohio App. 3d 277 (Ohio Ct. App. Oct. 15, 1997)..........................................11

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)................................................................................................7

*Crabbs v. Copperweld Tubing Prods., Inc.*,
    1999 Ohio App. LEXIS 1522 (Ohio Ct. App. May 1, 2019)................................14

*Escue v. Sequent, Inc.*
    568 Fed. Appx. 357 (6th Cir. 2014)......................................................................12

*Expeditors Int'l of Wash., Inc. v. Crowley Am. Transp., Inc.*,
    117 F. Supp. 2d 663 (S.D. Ohio 2000) .................................................................13

*Jaro Transp. Servs. v. Grandy*,
    2006 U.S. Dist. LEXIS 62932 (N.D. Ohio Sept. 5, 2006)....................................13

*Johnson v. Eggleston*,
    2013 U.S. Dist. LEXIS 10262 (N.D. Ohio Jan. 25, 2013)....................................15

*LeVangie v. Raleigh*,
2019 Ohio App. LEXIS 854 (Ohio Ct. App. Mar. 8, 2019) ...................................................12

*Lucarell v. Nationwide Mut. Ins. Co.*,
152 Ohio St. 3d 453 (Ohio 2018)....................................................................................7

*Martin Marietta Magnesia Specialties, L.L.C. v. PUC of Ohio*,
129 Ohio St. 3d 485 (Ohio 2011)....................................................................................9

*Merino v. Levine Oil Enters., LLC*,
2019-Ohio-205, 2019 Ohio App. LEXIS 218 (Ohio Ct. App. Jan. 18, 2019) .........................8

*Palmer v. First Transit, Inc.*,
2014 U.S. Dist. LEXIS 92435 (D. Colo. July 8, 2014) .......................................................14

*Powell v. Grant Med. Ctr.*,
148 Ohio App. 3d 1 (Ohio Ct. App. 2002) ............................................................................7

*Shifrin v. Forest City Enters., Inc.*,
64 Ohio St.3d 635 (1992).................................................................................................9

*Sunoco, Inc. (R&M) v. Toledo Edison Co.*,
129 Ohio St.3d 397 (Ohio 2011) ......................................................................................8

*Volovetz v. Tremco Barrier Solutions*,
74 N.E.3d 743 (Ohio Ct. App. 2016)...............................................................................10

*Warf v. United States Dep't of Veterans Affairs*,
713 F.3d 874 (6th Cir. 2013) .........................................................................................12

*Westfield Ins. Co. v. Galatis*,
100 Ohio St.3d 216 (Ohio 2003).......................................................................................8

*Wing v. Anchor Media, Ltd.*,
59 Ohio St. 3d 108 (Ohio 1991).......................................................................................13

**Other Authorities**

Fed. R. Civ. P. 1 ..............................................................................................................7

Fed. R. Civ. P. 56(e) ........................................................................................................7

## I.      INTRODUCTION

Plaintiff Jill Beckman was caught lying in an employment application process.  She is suing Defendant Guardant Health in an attempt to hold the Company responsible for her dishonesty.

Guardant terminated Plaintiff's employment for misconduct effective October 2, 2017. The Company notified Plaintiff of her termination on September 18, 2017, giving her two weeks' notice (with pay) and a draft separation agreement.  The proposed agreement offered a separation payment equal to four weeks' salary in exchange for a release of claims.  Plaintiff proposed no revisions to the draft agreement. On October 5, 2017, Guardant sent Plaintiff via email a final copy of the separation agreement for her signature – the agreement afforded her 21 days to consider and sign the agreement and advised her to consult with counsel during this time.  She did neither.  Instead, she signed the agreement and returned it the next day.  Also on October 5, Guardant sent Plaintiff a separate email containing four standard documents that the Company provides all employees upon separation.  Two of the documents set forth the Company's policy for employment verifications, which limits verifications to dates of employment, title, and salary. Plaintiff was asked to acknowledge her receipt of these four documents, which Plaintiff also did on October 6.

On December 6, 2017, Plaintiff received a conditional offer of employment from Bayer U.S., LLC – the offer was dependent on successful completion of Bayer's pre-employment requirements.  On December 27, 2017, Plaintiff received from Bayer a letter notifying her that the Company may not be able to extend an offer of employment to her "[b]ased in whole or in part on our hiring criteria, including information recently obtained in a consumer report completed by Justifacts . . . ."  Bayer provided Plaintiff with a copy of her background check report – the report, should the Court deem it admissible – reflects that Plaintiff reported she left

1

Guardant due to a workforce reduction ("downsized"), and that  Guardant truthfully reported that it terminated her employment due to her misconduct.  On January 11, 2017, Bayer notified Plaintiff that it could not extend an offer of employment to her.

Plaintiff now contends that Guardant is liable to her for breach of contract or, in the alternative, under the doctrine of promissory estoppel.  She claims Guardant was contractually bound by its employment verification policy conveyed in the Separation Documents because those documents were terms of the parties' separation agreement.  This claim fails because the separation documents were not integrated into the separation agreement, and Plaintiff provided no consideration for the information conveyed in the separation documents.  And even assuming the separation documents contained contractual obligations, Plaintiff has no evidence that she was injured by way of the alleged breach.  The record is devoid of any evidence – testimony or admissible documents – to explain the reason for Bayer's decision.

Plaintiff's promissory estoppel claim is equally doomed.  There is no evidence that Plaintiff detrimentally relied on Guardant's policy regarding employment verifications – she testified that she would not have done anything differently had she known Guardant was going to be truthful to prospective employers.  And given Plaintiff's dishonesty, her reliance on the Guardant's policy was neither reasonable nor foreseeable.  And, for the same reasons she cannot prove causation with her breach of contract claim, she cannot prove causation for her promissory estoppel claim.

Finally, Plaintiff executed a waiver releasing Guardant from any liability resulting from it furnishing employment information about Plaintiff to prospective employers.  So even if there were an issue of fact relating to either of her claims, she is estopped from pursuing them.

In sum, Plaintiff's Complaint is ripe for summary dismissal.

2

## II.     STATEMENT OF FACTS

### A.     Plaintiff's termination from Guardant Health, Inc.

Plaintiff worked for Guardant as an account executive selling Guardant360, a genomic liquid biopsy, from September 15, 2016 until October 2, 2017.  (Excerpts of *Deposition of Jill Beckman* ("Dep. _"), attached as Exhibit 1, Dep. 95-97, Ex. 12).  Guardant notified Plaintiff on September 18, 2017 that it was terminating her employment for misconduct due to her violation of a first and final written warning she received.  (Dep. 95-97, Ex. 12, p. 1).  Plaintiff was relieved of her duties on September 18, 2017, but the Company kept her on payroll through October 2, 2017 while she transitioned guardant clients to her manager.  (*Id.*)  Guardant provided Plaintiff on September 20, 2017, a letter of termination and a draft *Terms of* Separation Agreement (the "Separation Agreement") for her review.  (*Id*. at 96-99, Ex. 12).  Plaintiff did not propose any revisions to the Separation Agreement and did not review it with counsel.  (*Id.* at 100-102 & Dep. Ex. 13).  This Agreement did include an obligation for Guardant to provide a neutral employment verification for Plaintiff. (*Declaration of Amelia Merrill* ("Merrill Decl. ¶_"), attached as Exhibit 2, ¶3).

On October 5, 2017, Guardant emailed Plaintiff a final copy of the Separation Agreement, signed by VP of People Operations Amelia Merrill on behalf of Guardant.  (*Id.* at 99-100; Dep. Ex. 13).  This was the same agreement proposed to Plaintiff on September 20, and it did not include an obligation for Guardant to provide Plaintiff with a neutral employment verification.  (Merrill Decl. ¶4, Exs. A and B).  The Separation Agreement contained the following terms:

- Payment in exchange for a general release of claims: "In exchange for your agreement to the waiver of  claims set forth in paragraph 6 below, the Company agrees to: (1) pay you a total of 4 weeks base pay . . .; (b) reimburse any premium payments you make to continue your existing health insurance coverage under COBRA for up to 1 month.  By signing below, you acknowledge that you are

receiving the separation compensation outlined in this paragraph in consideration for waiving your rights to claims referred to in this agreement and that you would not otherwise be entitled to the separation compensation.

- An Acknowledgement that Plaintiff is bound by her confidentiality agreement dated September 8, 2016.

- An integration clause: "This agreement constitutes the entire agreement between you and Releasees with respect to the subject matter hereof and supersedes all prior negotiations and agreements, whether written or oral, relating to such subject matter other than the confidentiality agreement referred to in paragraph 5, above.  You acknowledge that neither Releasees nor their agents or attorneys have made any promise, representation or warranty whatsoever, either express or implied, written or oral, which is not contained in this agreement for the purpose of inducing you to execute the agreement, and you acknowledge that you have executed this agreement in reliance only upon such promises, representations and warranties as are contained herein.

- A no- modification clause: "It is expressly agreed that this agreement may not be altered, amended, modified, or otherwise changed in any respect except by another written agreement that specifically refers to this agreement, executed by authorized representatives of each of the parties to this agreement."

- A 21-day period to review the agreement and a 7-day period to revoke the agreement;

- A recommendation for Plaintiff to consult with counsel prior to signing the agreement.

(Dep. 99-100, Ex. 13; Merrill Decl. ¶4, Ex. C).  Plaintiff did not propose any modifications to the Agreement, and she did not take 21-days to review it.  (Dep. 101-102; Merrill Decl. ¶4).  Instead, she signed it and returned it to Guardant on October 6, 2017.  (*Id.*).

Also on October 5, 2017, People Operations Manager Casey Jenkins (*fka* Khoo) emailed Plaintiff standard end-of-employment acknowledgements and notices (collectively, "Separation Documents"), including a Final Paycheck Acknowledgement, Notice of Change in Employment Status, and an acknowledgment that company property has been returned. (Dep. 106-107, Ex. 14; Merrill Decl. ¶8, Ex. C). The Acknowledgement of Separation Documents and Notice to Employee as to Change in Relationship forms stated Guardant's policy regarding employment

4

verifications – the Company provides only dates of employment, last title, and salary at time of termination. (Dept. at 106-107; Dep. Ex. 14, p. 2; Merrill Decl. ¶10).  Guardant provides these Separation Documents to all employees upon separation, regardless of the reason for termination or whether the parties enter into a separation agreement.  (Merrill Decl. ¶¶6-7, Ex. B). Plaintiff acknowledged each of these notices with an electronic signature on October 6, 2017 and returned them to Guardant the same day.  (Dep. 106-109, Ex. 14).

### B.      Guardant Health provides employment verification for Plaintiff

Following her termination, Plaintiff applied for two positions with Bayer U.S. LLC ("Bayer").  (Dep. 111).  On December 6, 2017, Bayer extended Plaintiff a conditional offer of employment for a sales position.  (Dep. 124-125, Ex. 17).  One of the conditions of the offer was a "successful completion of the pre-employment requirements." (*Id.*)  Bayer used Justifacts Credential Verification, Inc., a third party credit reporting agency, to conduct a background investigation on Plaintiff.  (Dep. 124-130, Exs. 17 and 19).  Plaintiff provided on Justifacts' on-line portal her name, address, social security number, and employment history.  (*Id.*).  She did not, however, provide an accurate report of her employment history.  She excluded her employment with Helsinn Therapeutics ("Helsinn"), a position from which she was involuntarily terminated in 2016.[1]  (Dep. 25, 118-19; Dep. Ex. 1).  She also misreported that her employment with Guardant ended because the Company "downsized" her position.     (Dep. 110, 137-138, Ex. 20).  Not only did Guardant not eliminate Plaintiff's position, the Company was expanding in 2017 by hiring more account executives, of which Plaintiff was well aware because she had previously complained to Guardant about the expansive hiring.  (Dep. 54, 63-65, Ex. 3).  When

---

[1] Plaintiff also omitted her employment with Helsinn from her resume submitted to Bayer.  (Dep. 25, Ex. 1).  She worked at Helsinn for two months, during which time she received verbal counseling from her manager and, shortly thereafter, was terminated.  She and Helsinn signed a confidential separation agreement at the time of separation.  (Dep. 25-30).

Plaintiff completed the Justifacts questionnaire, she also executed a Justifacts Background Check Authorization Waiver, releasing all employers – including Guardant – from all liability for any damages on account of the furnishing of information in response to the employment verification. (Dep. 127-28, Ex 19 at GH 000400).

Plaintiff spoke to an individual in Bayer's human resources department (Brian LNU) on December 27, 2017.  (Dep. 130-131).  Brian asked Plaintiff is she had been terminated from Guardant, and she replied "not terminated.  I received a first and final written warning."  He then asked why her employment ended, and she responded, "because of a birthday email."  Brian then advised Plaintiff that he would send her a copy of her background report from Justifacts. (*Id.*). That same day, Bayer sent Plaintiff a letter notifying her that it may not be able to extend her an offer of employment "[b]ased in whole or in part on our hiring criteria, including information recently obtained in a consumer report completed by Justifacts . . . ."  (Dep. 130, Ex. 21).  The letter notified Plaintiff that she had 10 business days to dispute the accuracy of the report, which Plaintiff did not do.  (Dep. 140-41, 148, Ex. 21).  Instead, she contacted Guardant and asked the Company to refrain from reporting the reason for her termination to any *future* inquires.  She did not ask Guardant to contact Justifacts or Bayer on her behalf. (Dep. 141-144, Dep. Ex. 22).  On January 11, 2018, Bayer rescinded Plaintiff's conditional offer of employment.  (Dep. 147-148, Ex. 23).  Bayer again advised her that she could dispute the accuracy of her Justifacts report, which she did not do.  (*Id.*)

Based on these facts, Plaintiff asserts two causes of action against Guardant: (1) breach of contract, alleging that Guardant was legally bound to the Notice to Employee as to Change in Relationship form; and, in the alternative (2) promissory estoppel, alleging that Plaintiff reasonably relied to her detriment on the Notice to Employee as to Change in Relationship.

Guardant deposed Plaintiff on February 11, 2019.  Plaintiff took no depositions related to her lawsuit.

## III.    LAW AND ARGUMENT

### A.    Standard of Review

Summary judgment "is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  To withstand summary judgment, Plaintiff must establish – through competent, admissible evidence – the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff cannot merely rest on her allegations, denials, or documents contained in the pleadings. Rather, she must set forth "specific facts" which demonstrate that a genuine issue for trial exists.  *Id*. at 248.  If Plaintiff is unable to do so, then Defendant is entitled to judgment as a matter of law.

### B.    Plaintiff's Breach of Contract Claim Fails as a Matter of Law Under Well-Settled Principles of Contract Interpretation

"A contract is an agreement, upon sufficient consideration, between two or more persons to do or not to do a particular thing." *Powell v. Grant Med. Ctr.*, 148 Ohio App. 3d 1, 10 (Ohio Ct. App. 2002). "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach."  *Lucarell v. Nationwide Mut. Ins. Co*., 152 Ohio St. 3d 453, 469 (Ohio 2018).

#### 1.    The Separation Agreement created no obligation for employment verifications

This case involves interpretation of the Parties' Separation Agreement.  The Ohio Supreme Court explains a court's role in interpreting a contract under Ohio law:

> When confronted with an issue of contract interpretation, our role is to give effect to the intent of the parties.  We will examine the contract as a whole and presume that the intent of the parties is reflected in the language of the contract.   In addition, we will look to the plain and ordinary meaning of the language used in the contract unless another meaning is clearly apparent from the contents of the agreement. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties.  As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.

*Sunoco, Inc. (R&M) v. Toledo Edison Co.*, 129 Ohio St.3d 397, 400 (Ohio 2011) (quoting *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216 (Ohio 2003), internal quotations omitted).  Thus, "[t]he court's construction of a contract should attempt to harmonize all the provisions of the document rather than to produce conflict in them.*"  Merino v. Levine Oil Enters., LLC*, 2019-Ohio-205, ¶30, 2019 Ohio App. LEXIS 218 (Ohio Ct. App. Jan. 18, 2019).

The crux of Plaintiff's breach of contract claim is that Guardant was obligated under the terms of the Separation Agreement to provide to Plaintiff's prospective employers a neutral employment verification limited to dates, title, and salary.  (*See* Am. Compl. ¶26).  But the Separation Agreement makes <u>no</u> representation regarding employment verifications.  If it was the intention of the parties to include such an obligation, then express language could have and would have been included to that effect.  Guardant did not include any references in the two draft agreements it provided Plaintiff for review.  And Plaintiff had collectively five weeks to review the agreement, consult with counsel, and propose revisions or modifications.  But she did not do that - instead, she signed it as proposed.

Further, the Agreement clearly states the parties' mutual understanding that the written agreement is their only agreement; that the agreement could not be modified except for in writing signed by both parties; and that the terms of the agreement, plus the confidentiality agreement referenced in paragraphs 5 and 12, represent all promises and obligations between the parties.  Accordingly, as the Agreement is unambiguously clear that Guardant had no contractual

obligation with regard to what information could be provided in an employment verification for Plaintiff, her contract claim fails as a matter of law.  *Martin Marietta Magnesia Specialties, L.L.C. v. PUC of Ohio*, 129 Ohio St. 3d 485, 490 (Ohio 2011) (holding that the plain language of the contract controls the contract termination date and because the contract was unambiguous, there was no legal basis to look beyond the "four corners" of the document to determine the parties' intent).

> **2.      The parole evidence rule bars extrinsic evidence beyond the four corners of the Separation Agreement**

In the absence of any language in the Separation Agreement binding Guardant to a neutral employment verification, Plaintiff contends that the Separation Documents are extrinsic evidence of a contractual obligation that should be considered by the Court.  But Ohio's parole evidence rule bars this strained interpretation.  As an Ohio appellate court explains:

> The [parole evidence] rule is a rule of substantive law designed to protect the integrity of final, written agreements. If contracting parties integrate their negotiations and promises into an unambiguous, final, written agreement, then evidence of prior or contemporaneous negotiations, understandings, promises, representations, or the like pertaining to the terms of the final agreement are generally excluded from consideration by the court.

*Bollinger, Inc. v. Mayerson*, 116 Ohio App. 3d 702, 712 (Ohio Ct. App. 1996). In other words, extrinsic evidence beyond the four corners of a contract is excluded unless the language of the contract is unclear and ambiguous. *Shifrin v. Forest City Enters., Inc.*, 64 Ohio St.3d 635, 638 (1992).  Otherwise, the court would be creating a new contract by finding intent not expressed in the clear language by the parties. *Id*.

Here, the language of the Separation Agreement is unambiguous. The Parties included an integration clause in paragraph 12 of the Separation Agreement in which they agreed that the Agreement "constitute[d] the entire agreement" between them and that Plaintiff did not rely on "any promise, representation or warranty whatsoever…not contained in the agreement for the

purpose of inducing [her] to execute the agreement."  And, as stated, the plain language of the Separation Agreement is devoid of any mention of the issue of employment verifications.  So there is no basis to look beyond the Separation Agreement for the Parties' intent on this issue, and any effort to do so would result in creating conflict with the plain language of the contract. *Bollinger*, 116 Ohio App. 3d at 713 (finding a promise discussed around the time the parties negotiated a contract but not integrated into the written agreement was not binding under the terms of the contract).

Additionally, the Separation Agreement does not incorporate by reference any of the Separation Documents.  Under Ohio's doctrine of incorporation by reference, "[t]o incorporate a document, the contract must explicitly, or at least precisely, identify the written material [being] incorporated and must clearly communicate that the purpose of the reference is to incorporate the referenced material into the contract."  *Volovetz v. Tremco Barrier Solutions*, 74 N.E.3d 743, 751-52 (Ohio Ct. App. 2016).  Here, the parties did not reference any of the Separation Documents in the Separation Agreement, and Plaintiff had ample opportunity to propose this modification to the Separation Agreement.  And if the Parties had intended for the Separation Documents to be incorporated into the Separation Agreement, they would have done so by reference <u>as they did the Confidentiality Agreement in paragraphs 5 and 12 of the Separation Agreement</u>.  Accordingly, there is no evidence that the Parties intended for the Separation Documents to be incorporated to the Separation Agreement. *Volovetz*, 74 N.E.3d at 751-52 (holding contractual language was not sufficiently clear or specific to incorporate a separate limited warranty contract because the main contract failed to specify that any external document existed).

### 3.   No consideration for Guardant's policy about employment verifications

The statements in the Separation Documents do not, standing on their own, create a binding contractual obligation because there is no consideration.

> [C]onsideration consists of either a benefit to the promisor or a detriment to the promisee.  To constitute consideration, the benefit or detriment must be bargained for. Something is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise. * * * Gratuitous promises are not enforceable as contracts, because there is no consideration. A written gratuitous promise, even if it evidences an intent by the promisor to be bound, is not a contract.

*Carlisle v. T & R Excavating*, 123 Ohio App. 3d 277, 283 (Ohio Ct. App. Oct. 15, 1997)(internal quotations and citations omitted).  Guardant's standard policy is to provide neutral employment verification for all former employees, and it notifies all employees of that policy at the time of their termination.  Although the Company intended to follow this policy with Plaintiff – and its departure from the policy was caused by a non-management human resources clerk – Plaintiff provided no consideration in exchange for the policy.  And, again, she had sufficient opportunity to negotiate this term in eth Separation Agreement, but she elected not to do so.[2]

### 4.   No evidence that Plaintiff suffered damages as a result of the employment verification

Even assuming Guardant was contractually bound to provide Plaintiff a neutral employment verification (which it was not), Plaintiff has no evidence that Guardant's alleged response to Justifacts' inquiry about the reason for Plaintiff's termination (i.e., the alleged "breach") was the reason Plaintiff incurred damages from Bayer withdrawing its conditional

---

[2] Ohio courts recognize that while employment policies "may be important in establishing the terms and conditions of employment, absent the necessary mutual assent or meeting of the minds" between the employer and employee, such policies "merely constitute unilateral statements of company rules and regulations" rather than valid and enforceable contracts. *Caiazza v. Mercy Med. Ctr.*, No. 2013AP-12-0072, 2014 Ohio App. LEXIS *8-9 (Ohio Ct. App. May 27, 2014); *see also Bartlett v. Daniel Drake Mem. Hosp.*, 75 Ohio App.3d 334, 338 (Ohio Ct. App. 1991) (same).

offer of employment.  It is axiomatic that a party cannot recover damages for breach of contract without evidence that the purported damages were caused by the breach.  *LeVangie v. Raleigh*, 2019 Ohio App. LEXIS 854, *10-12 (Ohio Ct. App. Mar. 8, 2019).

The evidentiary record is silent about why Bayer withdrew the conditional offer of employment other than the letters from Bayer which state the decision was "[b]ased in whole or in part on our hiring criteria, including information recently obtained in a consumer report completed by Justifacts . . . ."  But the letters do not specify what criteria or information from the background report led to Bayer's decision to withdraw the conditional offer, and there is no sworn testimony from the decision-maker at Bayer explaining the reason for the offer withdrawal. In other words, Plaintiff failed to come forward with any evidence – beyond the allegations in her Amended Complaint, the inadmissible documents attached to the pleading – to substantiate her claim that Guardant's conduct was the reason Bayer did not hire her.  In fact, when asked in her deposition, "Why do you think that Bayer didn't hire you?", Plaintiff answered candidly, "I don't know."  (Dep. Ex. 148). *See Burniac v. Wells Fargo Bank, N.A.,* 2015 U.S. Dist. LEXIS 9583, *6 (E.D. Mich. Jan. 28, 2015) (holding that the plaintiff's conclusory complaint allegations and documents attached to the complaint were insufficient to survive summary judgment, citing *Warf v. United States Dep't of Veterans Affair*s, 713 F.3d 874, 878 (6th Cir. 2013)).

Accordingly, Plaintiff's breach of contract claim also fails because she has no admissible evidence that she suffered damages as a result of Guardant's conduct.  *Escue v. Sequent, Inc.* 568 Fed. Appx. 357, 365 (6th Cir. 2014) (affirming summary dismissal of the plaintiff's breach of contract claim because the plaintiff did not have evidence to show that the defendant's breach actually caused the plaintiff's loss).

12

**C.      Plaintiff's promissory estoppel claim fails as a matter of law**

Plaintiff contends, in the alternative, that although the Separation Documents were not supported by consideration, she relied on the Company's employment verification policy to her detriment and suffered damages as a result.  The doctrine of promissory estoppel may sometimes render enforceable a statement or offer not otherwise supported by consideration where there is a clear and unambiguous promise, foreseeability by the promisor, and reasonable reliance by the promisee to her detriment.  *Expeditors Int'l of Wash., Inc. v. Crowley Am. Transp., Inc.,* 117 F. Supp. 2d 663, 669 (S.D. Ohio 2000) (dismissing the plaintiff's promissory estoppel claim absent evidence of detrimental reliance).

**1.      Plaintiff did not rely on the employment verification policy to her detriment – and even if she did, the reliance was neither reasonable nor foreseeable**

"The doctrine of promissory estoppel is centered on the notion that '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'"  *Jaro Transp. Servs. v. Grandy*, 2006 U.S. Dist. LEXIS 62932, *49 (N.D. Ohio Sept. 5, 2006)(quoting *Wing v. Anchor Media, Ltd.*, 59 Ohio St. 3d 108 (Ohio 1991)). "An essential element of any action predicated on promissory estoppel is detrimental reliance." *Id.* at *52 (internal quotation and citation omitted).

Plaintiff contends she relied on Guardant's employment verification policy to her detriment because she relied on Guardant to corroborate through silence her dishonesty to a prospective employer.  But Plaintiff's testimony precludes her from proving detrimental reliance. She could not identify anything she would have done differently had she known Guardant would provide truthful information in response to an inquiry about the reason for her termination. (Dep. 152).  Indeed, the only thing she could have done differently was to be honest with

Justifacts.  In which case, Bayer would not have hired her anyway if her theory is correct that the offer was withdrawn because of the misconduct.  *See Andersons, Inc. v. Consol, Inc*., 348 F.3d 496, (6th Cir. 2003)(explaining that "because plaintiff would not have done anything differently had defendant disclosed [a fact], plaintiff could not have detrimentally relied on such an omission"(emphasis added)); *Crabbs v. Copperweld Tubing Prods., Inc*., 1999 Ohio App. LEXIS 1522, *9 (Ohio Ct. App. May 1, 2019) (affirming dismissal of the plaintiff's promissory estoppel and holding that the plaintiff could not prove detrimental reliance because "he testified in his deposition that he would not have acted any differently if the statements [by his employer] not been made").  Without detrimental reliance, Plaintiff's promissory estoppel claim must be dismissed.

Assuming for argument's sake that Plaintiff relied to her detriment on Guardant's employment verification policy, her reliance was neither reasonable nor foreseeable.  She was blatantly dishonest with Justifacts as to the reason for her termination from Guardant, and she expected Guardant to support this misrepresentation.  Plaintiff got caught in a lie, and it is not reasonable to blame Guardant for it or to rely on Guardant to assist her in the cover-up. Guardant has an obligation – like any employer – to respond honestly to direct inquiries from prospective employers.  No employee could reasonable expect an employer to do otherwise. Moreover, Guardant could not possibly foresee that Plaintiff would be dishonest with a prospective employer or that the truthful information it provided would contradict Plaintiff's submission as to why her employment ended.  So, the absence or reasonable and foreseeable reliance also dooms Plaintiff's promissory estoppel claim.  *Palmer v. First Transit, Inc.,* 2014 U.S. Dist. LEXIS 92435, at *16-17 (D. Colo. July 8, 2014)(summarily dismissing the plaintiff's

promissory estoppel claim and holding it was not reasonable for an employee to expect a former employer to withhold information during a reference check process).

> **2.** **No evidence that Plaintiff suffered damages as a result of Guardant's alleged deviation from its employment verification policy and holding Guardant liable for not enforcing this policy is unjust**

Like her breach of contract claim, Plaintiff cannot prove that she suffered damages because Guardant presumably reported it terminated her for misconduct.  The offer from Bayer was <u>conditional</u>, not absolute – and Plaintiff has no evidence that but for the information Guardant (truthfully) provided, her conditional offer would have materialized into a definite offer.  And, as stated, the record is silent as to the reason for Bayer's decision, and Plaintiff cannot rely on the absence of evidence to create a material issue of fact for trial – she needs testimony or other admissible evidence to explain what in her background investigation triggered Bayer's decision to withdraw the conditional offer of employment.  *Johnson v. Eggleston*, 2013 U.S. Dist. LEXIS 10262, *12 (N.D. Ohio. Jan. 25, 2013) ("Plaintiff cannot rely on the absence of evidence to survive summary judgment when the burden rests upon him to set forth specific facts showing that there is a genuine issue for trial." (internal quotation and citation omitted)).

Finally, enforcement of Guardant's employment verification policy – assuming it induced Plaintiff to act or not act to her detriment and that such reliance was reasonable and foreseeable – does not prevent any injustice.  For a trier-of-fact to find in favor of Plaintiff, it would have to conclude that Guardant should not have answered Justifacts inquiry honestly and accurately. And requiring employers to misrepresent the employment status of their workforce strongly weighs against public policy and the interests of justice.

> **D.** **Plaintiff waived her claims against Guardant**

Even if the Separation Documents were an enforceable contract or enforceable under the doctrine of promissory estoppel, Plaintiff released her claims against Guardant from all liability

for any damages resulting from the furnishing of information in response to requests for employment verification.  (Dep. 127-28, Ex. 19 at GH 000400).  For this additional reason, Plaintiff's claims must be dismissed.  *See Baumgartner v. AIM Leasing*, 2013 Ohio App. LEXIS 776, (Ohio Ct. App. 2013) (holding that the plaintiff was estopped from suing his former employer for releasing negative information about him to a prospective employer because he executed a waiver releasing the former employer from any liability resulting from furnishing such information).

## IV.    CONCLUSION

Losing the conditional offer of employer from Bayer was no doubt difficult for Plaintiff. But the law does not provide a legal or equitable remedy for Plaintiff, and certainly not a remedy for which Guardant is liable.  Guardant's employment verification policy was just that – a policy. It was not a contract.  It was not integrated or otherwise referenced in the Parties' Separation Agreement.  Nor did Plaintiff provide consideration for a neutral employment verification, and she cannot prove that Guardant's conduct was the reason Bayer withdrew its offer.  There is also no evidence that Plaintiff relied to her detriment on the employment verification policy, or if she did, that her reliance was reasonable or foreseeable.  And, like her breach of contract claim, there is no evidence that Guardant's conduct was the reason for her loss.

Accordingly, Guardant respectfully requests that the Court dismiss all of Plaintiff's claims with prejudice.

Respectfully submitted,


/s/ Amy Ryder Wentz
Amy Ryder Wentz (0081517)
Shannon M. Byrne (0088182)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH  44114
Telephone: 216.696.7600
Facsimile: 216.696.2038
awentz@littler.com
sbyrne@littler.com

Attorneys for Defendant
GUARDANT HEALTH, INC.

FIRMWIDE:163984443.3 098177.1001

17